Filed 12/7/22  In re O.L. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re O.L. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.L.,<br><br>Defendant and Appellant. | F084677<br><br>(Super. Ct. Nos. JD143159-00, JD143160-00)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Morris, Judge.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]    Before Peña, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

J.G. (mother) and D.L. (father) are the parents of O.L. (born August 2020) and S.L. (born September 2021). Father appeals from the juvenile court's dispositional order pursuant to Welfare and Institutions Code section 360.[1] Father's sole contention on appeal is that the Kern County Department of Human Services (department) and the juvenile court failed to comply with the requirements of further inquiry pursuant to the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.[2]

In the present case, both maternal and paternal sides of the family claimed Indian ancestry with the Cherokee tribes, and the department sent inquiries to the three federally recognized Cherokee tribes. The tribes responded that the children were not Indian children within the meaning of ICWA, and the juvenile court found ICWA did not apply. On appeal, father argues the department should also have sent inquiries to the Bureau of Indian Affairs and the State Department of Social Services. The department argues it was not required to send inquires to the Bureau of Indian Affairs and the State Department of Social Services because it sent inquiries to the Cherokee tribes. We affirm the juvenile court's ICWA finding.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### I.     Petitions and Detention

On March 20, 2022, law enforcement conducted a probation search at the family home and discovered the children in the home under the supervision of maternal

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]     Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

grandmother Angel C. and maternal grandmother's boyfriend who appeared to be under the influence of a controlled substance. The children were detained and placed in a licensed foster home.

During the department's investigation, a social worker asked father if he had Indian ancestry and he responded, " 'Not that I am aware of.' " Mother was also asked if she had Indian ancestry and reported her maternal great-grandmother Kathy S. is Cherokee. She provided maternal great-grandmother's phone number and said she could be contacted for further information. Mother stated she wanted her children placed with maternal aunt Candice C. if the children could not be returned to her custody.

On March 22, 2022, the department filed petitions on behalf of the children pursuant to section 300, subdivision (b) (failure to protect). The petitions included Indian Child Inquiry Attachments (ICWA-010(A)) stating the social worker asked mother and father about Indian ancestry and they gave her reason to believe the children were or could be members or eligible for membership in the Cherokee tribe.

Both parents filed Parental Notification of Indian Status (ICWA-020) forms. Father declined he had Indian ancestry. Mother stated she was "[p]oss[ibly] Cherokee" from Kentucky.

On March 23, 2022, at the detention hearing, the juvenile court stated it received information that mother may have Indian ancestry, specifically with the Cherokee tribe. Mother agreed. She testified maternal great-grandmother told her she had Cherokee ancestry. Maternal great-grandmother was still alive. To mother's knowledge, no one in her family had ever lived on a reservation or received tribal benefits. The court also inquired of father, who testified he did not have Indian ancestry. To his knowledge, no one in his family had ever lived on a reservation or received tribal benefits. The court advised both parents to notify their attorneys and social worker as soon as possible if they received new information related to their Indian ancestry. The court found ICWA did not apply as to father, but reserved the issue as to mother.

## II.     Jurisdiction and Disposition

On March 29, 2022, a social worker spoke with paternal grandmother Nancy B., paternal great-aunt Robin H., and maternal great-grandmother. Paternal grandmother reported Indian ancestry with the Cherokee tribes. She said the Indian ancestry came from paternal great-grandfather William L.'s side of the family. Paternal grandmother did not know paternal great-grandfather's date of birth or any relatives who could provide more information.

The social worker then spoke with paternal great-aunt who also reported Cherokee ancestry through paternal great-grandfather's side of the family. Paternal great-aunt did not know paternal great-grandfather's date of birth. Paternal great-aunt stated paternal great-grandfather's grandmother (i.e. paternal great-great-grandmother) was 100 percent Cherokee, but could not recall her name or date of birth.

The social worker next spoke to maternal great-grandmother. Consistent with mother's claims, she reported possible Cherokee ancestry. She did not have information as to individuals who could provide more information. She said the Indian ancestry was through maternal great-great-grandfather Clarence M.'s side of the family, but did not know his date of birth.

On May 11, 2022, at a combined jurisdiction and disposition hearing, the juvenile court found the allegations in the petition true.

On June 1, 2022, the department's paralegal asked the social worker about the status of father's possible Indian ancestry and asked her to submit an updated "ICWA Request form." In the updated request father claimed Cherokee tribal affiliation.

On June 1, 2022, the paralegal contacted maternal great-grandmother to ask about the family's Cherokee ancestry. Maternal great-grandmother again agreed she had Cherokee ancestry but "not much." She, nor anyone in the family, were enrolled in a tribe. The social worker asked "if any of the family were born or lived on tribal land, received benefits or services from a tribe, or attended an Indian school. [Maternal

4.

great-grandmother] said no and but [*sic*] yes and not because of the Cherokee heritage, but she and her [three] youngest children lived on an Indian reservation out by Needles California around 1990, but it is not related to the Cherokee heritage, that it was a trip from Montana and came to California and had no place to stay with their vehicle they were living in, and were able to live on the Indian land a while. [Maternal great-grandmother] added that her three children did attend some Indian school while they were there, but still, in no relation to their own heritage and were not members of that tribe or anything." Maternal great-grandmother reported the Cherokee heritage came from maternal grandmother. She provided maternal grandmother's date of birth, place of birth, phone number, and stated that maternal grandmother is not a member of any tribe. Maternal great-grandmother also provided her own date of birth, place of birth, and stated she is not a member of a tribe. She then reported the heritage came through her father (i.e., maternal great-great grandfather) and provided his date of birth, place of birth, date of death, place of death, and stated he was not a member of a tribe. Maternal great-grandmother provided maternal grandmother's phone number.

On June 1, 2022, the paralegal also spoke to mother for ICWA purposes. Mother said she did have Cherokee ancestry, but denied that she or anyone in her family were registered with a Cherokee tribe. Mother provided her date of birth, place of birth, and her current address.

On June 2, 2022, the paralegal spoke with father regarding ICWA. He agreed there was Cherokee ancestry in his family. He denied being registered with a tribe. He did not know what Cherokee tribe the affiliation was with, but said paternal grandmother would have more information. He did not believe paternal grandmother was a tribe member, but said he would have to ask her. He did not know whether any family members were enrolled in a tribe, born or lived on tribal land, received services or benefits from a tribe, or attended an Indian school. Father confirmed his date of birth, place of birth, and provided his current address.

5.

On June 2, 2022, the paralegal attempted to reach paternal grandmother at her phone number, but was unsuccessful and sent her a text message requesting a call back to discuss ICWA. She later received a voicemail in which paternal grandmother stated, "all she knows is that her father told her, that he was half Cherokee blood and that his mother, was full Cherokee."

On June 2, 2022, the paralegal spoke to paternal great-aunt. She reported, "there is not even enough Indian blood in them to do anything with, there's no proof, that they already looked it up on Ancestry and nothing [was] there." The paralegal informed her it was still the department's duty to investigate and asked if the ancestry was with the Cherokee tribe. Paternal great-aunt said yes. She said the ancestry came from paternal great-grandfather's side of the family and the paternal great-great-grandmother "Alice London AKA Levenshimer," but she was unsure of how her name was spelled. Paternal great-great-grandmother was "very Cherokee Indian" however, she was deceased. She did not know paternal great-great-grandmother's date of birth or date of death, but said she was born in and passed away in Ohio. She denied any family members were enrolled in a tribe, born or lived on tribal land, received services or benefits from a tribe, or attended an Indian school. She reported paternal grandmother was her sister. She said paternal grandmother would not have further information as paternal grandmother referred to her for any questions. She provided paternal grandmother's date and place of birth and a previous last name she used. She provided information for herself and paternal great-grandfather, who was deceased. She provided his date of birth, place of birth, approximate date of death, place of death, and his last city of residence.

On June 7, 2022, the paralegal sent an ICWA inquiry (ICWA-030) form for each child by certified mail to the Eastern Band of Cherokee Indians and to the United Keetoowah Band of Cherokee Indians. She also sent an ICWA-030 form for each child to the Cherokee Nation by email at the tribe's request. The ICWA forms included detailed familial information for both mother and father.

All three tribes sent responses stating that the children were not Indian children.

On July 25, 2022, at a continued disposition hearing, the juvenile court found ICWA did not apply.

On July 26, 2022, father filed a notice of appeal.

## DISCUSSION

I.     ICWA

A.     Background

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *9–10], fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10].)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions

7.

Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10–11].)

### B. Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *11–12].)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' "[4] (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents,

---

[4] Section 224.2, subdivision (k), was amended by Assembly Bill No. 2960 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to our discussion in this case.

legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[5] Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

---

**5** "Courts have recognized it is somewhat inaccurate to refer to the agency's ' " 'initial duty of inquiry' " ' [citation] because the duty ' "begins with the initial contact" (§ 224.2, subd. (a)) and continues throughout the dependency proceedings' [citation]. However, in this case, like many others, an ICWA inquiry was made only of the parents and after the juvenile court found ICWA did not apply at the detention hearing, no further information was gathered. Given that our discussion on error … focuses on the first step of the inquiry and does not involve the duty of further inquiry or notice, we use the term duty of initial inquiry." (*K.H.*, *supra*, 84 Cal.App.5th at p. 597, fn. 10.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

## II.     Analysis

### A.      Summary of ICWA Inquiry

The record reflects both mother and father reported having Indian ancestry with Cherokee tribes. Several extended family members were inquired of, including paternal grandmother, paternal great-aunt, and maternal great-grandmother. The department contacted those family members on two different occasions specifically to ask about the family's Indian ancestry and gathered detailed information about the maternal and paternal families. Each family member reported the families had Cherokee ancestry, but denied tribal membership. After gathering familial information, the department sent ICWA-030 forms to the United Keetoowah Band of Cherokee Indians in Oklahoma, the Eastern Band of Cherokee Indians, and the Cherokee Nation—the three federally recognized Cherokee tribes. All three tribes sent responses stating the children were not Indian children.

Father argues the department and the juvenile court failed to discharge their duty of further inquiry because in addition to sending inquiries to the tribes, inquiries should have been sent to the Bureau of Indian Affairs and the State Department of Social Services. Father contends the error was prejudicial and requires reversal. The department argues that inquiry to the Bureau of Indian Affairs and the State Department

10.

of Social Services was not required because the department identified the Cherokee tribes at issue and sent inquiries.  We agree with the department.

## B.    Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, *supra*, __ Cal.App.5th __ [2022 Cal.App. Lexis 923, *17].)  First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*Ibid*.)  Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18].)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.]  The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.]  The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation].  '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *18].)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within

the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19]; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.)  Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion.  (*K.H.*, at p. 601; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18–19]; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.]  But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.]  [¶]  While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19].)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.]  Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19–20].)

### C. Department and Juvenile Court Did Not Err

#### 1. Duties

As previously mentioned, "[i]f the court[ or the department] has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information

to determine that there is reason to know that the child is an Indian child, the court[ or the department] shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court[ or social worker] … [have] information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id*., subd. (e)(1).) "When there is reason to believe the child is an Indian child, further inquiry is necessary to help the court[ or social worker] … determine whether there is reason to know to know a child is an Indian child. Further inquiry includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of [s]ection 224.3. [¶] (B) *Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes* in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably have information regarding the child's membership status or eligibility. [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)–(C), italics added.)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)

13.

## 2. Juvenile Court's Finding Supported by Substantial Evidence

Here, the department's inquiry complied with the plain language of section 224.2, subdivision (e)(2). The department was only required to inquire with the Bureau of Indian Affairs and the State Department of Social Services if it needed "assistance in identifying the names and contact information of the tribes in which the [children] may be a member, or eligible for membership in …." (§ 224.2, subd. (e)(2)(B.) Because both sides of the family only claimed Indian ancestry via the Cherokee tribes, the department did not need to conduct further inquiry with the Bureau of Indian Affairs or the State Department of Social Services. See *In re Josiah T.* (2021) 71 Cal.App.5th 388, 405 [" 'The burden is on the [department] to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe or, if the tribe is unknown, to the [Bureau of Indian Affairs].' "]; see *In re A.W.* (2019) 38 Cal.App.5th 655, 663 ["if the court 'knows or has reason to know that an Indian child is involved,' notice of the pending proceeding and the right to intervene must be sent to the tribe or the BIA if the tribal affiliation is not known"].) The department had the names and contact information of the three federally recognized Cherokee tribes that the children were possibly members of, or eligible for membership in, and sent detailed ICWA-030 forms to each tribe. The tribes responded that the children were not Indian children. Therefore, the department fulfilled its statutory duty of further inquiry. (§ 224.2, subd. (e).) Accordingly, the juvenile court's finding that ICWA did not apply was supported by substantial evidence and was not an abuse of discretion.

## DISPOSITION

The juvenile court's order is affirmed.

14.